IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ADOLFSON & PETERSON, INC.

     Plaintiff,

v.                                      Civil Action No. 3:16-cv-01394-HES-MCR

SILVER CREEK GENPAR, LLC

     Defendant.

_____/

## MOTION TO COMPEL DISCOVERY

Plaintiff, Adolfson & Peterson, Inc. ("AP") moves this Court to compel Defendant, Silver Creek Genpar, LLC ("Silver Creek"), pursuant to Federal Rules of Civil Procedure 26, 33 and 34 to: (1) produce Mitchell Montgomery's computer for inspection and imaging, (2) provide a compliant privilege log in accordance with the Federal Rules, and (3) provide Answers to Interrogatories that comply with the Federal Rules. In support, AP states as follows:

## I.   INTRODUCTION

AP brought the instant action to recover amounts due under a Replacement Promissory Note executed by Silver Creek in favor of AP in connection with the construction of a senior care facility in St. Augustine, Florida (the "Project"). Silver Creek has raised a variety of contentions regarding why it is not obligated to repay the amount due under the Replacement Promissory Note—arguments that require discovery concerning Silver Creek and its agents' communications with AP, its subsidiaries and affiliates, and numerous other third parties. In discovery, AP thus served numerous discovery requests seeking these communications and other information regarding Silver Creek's contentions.

Silver Creek made two productions of documents in April 2018 and again on June 14, 2018.[1] The June 14, 2014 production contained all of the email correspondence produced by Silver Creek through that date: less than 25 emails from any person at Silver Creek, including its main principal, Mitchell Montgomery. The stated reason for the dearth of emails was that Mr. Montgomery "did not print a lot of emails," and "did business the old fashion way" by speaking on the telephone. However, AP received hundreds of emails involving Mr. Montgomery and the Project pursuant to a third party subpoena to Mr. Montgomery's prior law firm, suggesting Mr. Montgomery conducted significant business concerning the Project by email.

AP repeatedly raised the issue concerning the discrepancy between the volume of emails produced by Silver Creek and the volume of emails produced by the third party, and repeatedly sought information concerning Silver Creek's preservation, identification and production of electronically stored information ("ESI"), including most specifically, Mr. Montgomery's emails. AP's concern was that a proper collection of ESI from available sources had not occurred, and thus, AP had not received the entire scope of documents and emails it was entitled to under the Rules.

AP's concern was heightened by the testimony of Silver Creek's corporate representative, Elsa Montgomery. Ms. Montgomery testified on June 18, 2018 that she had deleted Mr. Montgomery's email account in June 2017 during the pending litigation, though she stated his emails were still saved on his computer. After two weeks of attempting to confer, Silver Creek

---

[1] Silver Creek also made additional documents available for copying after June 14, 2018, but counsel for Silver Creek indicated that he believed those documents were not responsive or relevant to the litigation. [June 19, 2018 Email String, attached as **Exhibit A**]. The documents were later copied on June 28, 2018 in an abundance of caution and after discussion with another Silver Creek attorney, Jan McCormick, who indicated that some of the documents in her possession were related to the Project.

never provided an explanation regarding the discrepancy in the volume of emails produced or properly explained its procedures for collecting ESI.

AP also repeatedly raised issues regarding the deficiencies with respect to Silver Creek's privilege log and updated privilege log and with its Supplemental Answers to Interrogatories. Silver Creek failed to correct any of the deficiencies in its original privilege log, despite representing that it would do so, and its updated privilege log appears to be incomplete as well. Silver Creek has also wholly ignored AP's repeated attempts to confer regarding the deficiencies in its Supplemental Answers for Interrogatories.

Silver Creek's failure to explain its ESI collection procedure and the discrepancy regarding the emails produced by a third party and its own email production raises a concern that all responsive documents have not been collected and produced in this litigation. As a result, AP seeks an order from this Court compelling Silver Creek to produce Mitchell Montgomery's computer for inspection and forensic imaging so that AP may determine whether all relevant, responsive documents have been produced in this litigation. AP also seeks an order requiring Silver Creek to provide an appropriate privilege log and compliant Answers to Interrogatories. Given that June 29, 2018 is the scheduled date for the close of discovery, AP also respectfully requests a short extension of the discovery cutoff consistent with the relief requested in this Motion.

## II.   FACTUAL BACKGROUND

### A.  Pleaded Allegations

On May 28, 2014, Silver Creek executed a Promissory Note in favor of AP for $1,500,000 in connection with the Project. [ECF No. 41, at 2]. On August 8, 2014, Silver Creek executed a Replacement Promissory Note in favor of AP for $2,250,000 in connection with the

Project. [ECF No. 41, at 2]. Silver Creek is the general partner of nonparty Silver Creek St. Augustine, LLLP, which is the owner of the Project. [ECF No. 41, at 2]. AP's affiliate, nonparty AP Atlantic, Inc., is the general contractor for the Project by virtue of an assignment by nonparty AP Gulf States, Inc. [ECF No. 41, at 2].

The Replacement Promissory Note was secured by a Security Agreement Accompanying Secured Promissory Note (the "Mortgage"). [ECF No. 41, at 3; ECF No. 41-2]. The Replacement Promissory Note matured on August 31, 2016. [ECF No. 41, at 3]. The Replacement Promissory Note specified that in the event of nonpayment or other default thereunder, the outstanding principal, interest and all other amounts contemplated by the loan documents would become due and payable by Silver Creek to AP. [ECF No. 41, at 3]. Upon the maturing of the Replacement Promissory Note, AP alleges that Silver Creek failed to pay all amounts due. [ECF No. 41, at 3].

AP filed its original complaint on November 4, 2016, asserting Silver Creek failed to pay all sums due under the Replacement Promissory Note, and Silver Creek therefore owed AP $2,243,067. [ECF No. 1, at 1-3].  Except for Silver Creek's Motion to Dismiss for Lack of Venue and some limited discovery served by Silver Creek, as well as an internal investigation by AP, the case progressed very little for approximately one year in deference to the ultimately terminal illness of Silver Creek's principal, Mitchell Montgomery. [ECF No. 38]. Mr. Montgomery passed away in June 2017.

Following Mr. Montgomery's passing, AP was granted leave to file an Amended Complaint, which was filed on January 10, 2018. [ECF No. 41].  The Amended Complaint asserts claims for: (1) reestablishment of the lost Replacement Promissory note; (2) breach of the

Replacement Promissory Note; (3) foreclosure of the Mortgage and security interest based on the breach of the Replacement Promissory Note. [ECF No. 41, at 4-8].

Silver Creek filed its Answer and Affirmative Defenses on January 23, 2018. [ECF No. 42]. Among other things, Silver Creek asserted that the Replacement Promissory Note is not due because the total amount of the Replacement Promissory Note was never lent to AP, as evidenced by a referenced $750,000 letter of credit having not been called. [ECF No. 42, at 5]. It also asserted that an origination fee of $67,500 was not part of the Replacement Promissory Note, but only the original Promissory Note, and that amount was already satisfied. [ECF No. 42, at 5]. Silver Creek also asserted that after the Replacement Promissory Note was executed, the parties agreed that the income to be generated from the Project would be used to repay at least part of the Replacement Promissory note. [ECF No. 42, at 5]. And due to AP and its affiliates' alleged failure to complete the Project in a "timely and professional manner," as well as "substantial cost overruns," the Project was not ready for occupancy on time; as such, AP's actions allegedly prevented Silver Creek's performance under the Replacement Promissory Note. [ECF No. 42, at 5-6].

Furthermore, Silver Creek asserted that AP is not the holder of the Replacement Promissory Note and that neither AP Atlantic, Inc. nor AP Gulf States, Inc. is entitled to payment of any amounts due under their assigned construction contract because AP Gulf States, Inc. was not a licensed Florida contractor at the time of the assignment. [ECF No. 42, at 7-8]. Finally, Silver Creek asserted that AP failed to deliver the executed, original Replacement Promissory Note to Silver Creek, and Silver Creek is entitled to a set off against any amounts due as a result of "its damages and loss[ed] income from the Project." [ECF No. 42, at 7-8].

On the same day that Silver Creek filed its Answer and Affirmative Defenses, the Court issued a Case Management and Scheduling Order directing the parties to complete discovery by June 29, 2018. [ECF No. 43, at 1].

### B.  Discovery Served on Silver Creek

Following the filing of its Amended Complaint, AP served its First Request for Production on February 21, 2018. [First Request for Production, attached as **Exhibit B**]. Among other requests, AP sought all communications between Silver Creek and any other party relating to the negotiation, execution or delivery of the Replacement Promissory Note and Mortgage. **[Exhibit B**, at 9]. AP also specified that it was seeking electronically stored information ("ESI") and provided its preferred method of production. [**Exhibit B**, at 3-8]. Silver Creek responded on April 3, 2018. [Response to First Request for Production, attached as **Exhibit C**].  Silver Creek did not object to any of the discovery requested but asserted that 5 documents relating to the negotiation, execution or delivery of the Promissory Note and Replacement Promissory Note and/or the Mortgage were privileged (though no formal privilege log was provided). [**Exhibit C**, at 2]. Silver Creek produced a total of 9 documents with its response.

On May 4, 2018, AP served a Second Request for Production and First Set of Interrogatories on Silver Creek. [Second Request for Production, attached as **Exhibit D**; First Set of Interrogatories, attached as **Exhibit E**].  The Second Request for Production again specified that AP sought the production of ESI, as contemplated by the Federal Rules. [**Exhibit D**, at 2-7]. The Second Request for Production sought a variety of documents that would include communications[2] relating to:

---

[2]  The Second Request for Production explicitly stated that the term "Document" and "Documents" included "Communication" or "Communications" as defined elsewhere in the Second Request for Production. [**Exhibit D**, at 4].

- (Requests 19-20) the Promissory Note dated May 29, 2014 attached to Silver Creek's Answer

- (Request 22) holders of debt issued by Silver Creek

- (Request 23) Silver Creek's acquisition of interests in Silver Creek St. Augustine, LLLP

- (Request 24) ZKV, LLC's sale of its interest in Silver Creek

- (Request 25) Silver Creek's assumption of project management duties for the Project

- (Requests 26-27) Silver Creek's communications with Zerga Development and Zerga Management regarding the Project

- (Requests 28-31) Silver Creek's communications with Silver Creek St. Augustine, LLLP's members, ZKV, LLC, and/or Silver Creek-MRM, LLC, and/or Greenbrier Senior Living, LLC and/or Greenbrier Development Company, LLC regarding the Project

- (Request 49) the establishment of the $750,000 letter of credit described in Silver Creek's Third Affirmative Defense, draws on the letter of credit, communications with third parties regarding the establishment, status or closing of the letter of credit, inclusion of the letter of credit in the Replacement Promissory Note or the present status of the letter of credit

- (Request 50) the origination fee or documents that establish Silver Creek's payment of the origination fee or its forgiveness

- (Requests 52-57, 59-60) alleged delays in the Project, AP's alleged failure to complete the Project in a timely and professional manner, and any alleged defects in the construction of the Project

- (Request 58) Silver Creek's management of the Project

- (Requests 62-63) alleged substantial cost overruns incurred by the Project

- (Request 64) the parties' alleged contemplation, as asserted by Silver Creek, that the income generated from the Project would be used in part to pay the Replacement Promissory Note

- (Request 73) efforts by Silver Creek to obtain any financing, refinancing or investment concerning the Project, or any additional planned developments

- (Request 74) AP Gulf State, Inc.'s status as a licensed contractor in Florida

- (Request 75) the assignment and assumption agreement between AP Gulf States, Inc. and AP Atlantic, Inc.

- (Request 76) communications between Silver Creek and any party relating to AP Atlantic Inc.'s performance on the Project

- (Request 77) AP Atlantic, Inc.

- (Request 78) communications between Silver Creek, AP, AP Gulf States, Inc., or AP Atlantic, Inc.

- (Request 79) the negotiation, execution or performance of the parties' January 26, 2016 settlement agreement

- (Request 81) communications between Silver Creek and Jan McCormick relating to the Project

- (Request 83) amounts charged to the Project by Baker Barrios Architects, Inc.

[**Exhibit** D]. AP also sought discovery regarding a variety of contentions raised in Silver Creek's Answer and Affirmative defenses (Requests 32-35, 37-54, 62, 64, 67-69), and those requests encompassed communications involving Silver Creek. [**Exhibit D**].

8

Silver Creek served its responses to AP's Second Request for Production and First Set of Interrogatories on June 14, 2014. [Response to Second Request for Production, attached as **Exhibit F**; Answers to First Set of Interrogatories, attached as **Exhibit G**]. It also served a Supplemental Response to AP's First Request for Production, asserting that it had located an alleged original copy of the Replacement Promissory Note that did not include a signature from AP principal, Jeffrey Hansen. [Supplemental Response to First Request for Production, attached as **Exhibit H**]. Again, Silver Creek did not assert any objection to any of the Requests for Production, except that it asserted all documents responsive to Request 81—which seeks all communications between Silver Creek and Jan McCormick, a transactional attorney who advised Silver Creek, concerning the Project—were privileged. [**Exhibit F**].

Along with its Response to the Second Request for Production, Silver Creek made approximately 120 documents available for copying at counsel's office, and directed AP to an online portal for financial documents it stated were responsive to Requests for Production 70-73. [**Exhibit F**].

A privilege log was served along with the Response to the Second Request for Production. [June 14, 2018 Privilege Log, attached as **Exhibit I**]. The log included 11 entries in total—8 emails of which 7 were between Ms. McCormick and other individuals—and did not identify the privilege asserted or describe the basis for the assertion of privilege. [**Exhibit I**]. The log also did not include the 5 documents identified as privileged in Silver Creek's Response to AP's First Request for Production. [*Compare* **Exhibit C** (response to first request for production identifying emails dated August 4, 6, 8, 14, and 15 of 2014 as privileged) with **Exhibit I** (original privilege log identifying no August 2014 communications)]. Additionally, the log appears to include communications with individuals outside of Silver Creek, including

9

bondholders, and thus, no privilege would have been established. [**Exhibit I**]. At any rate, the privilege log did not identify the various capacities of the individuals listed on the log, so it was impossible to confirm whether the privilege had been established for some of the entries.

Silver Creek's Answers to AP's First Set of Interrogatories were not sufficient. [**Exhibit E**; **Exhibit G**]. While the First Set of Interrogatories requested information regarding all facts and documents supporting 7 of Silver Creek's positions taken in this litigation, Silver Creek's responses failed to provide complete responses. For example, Interrogatory #5 requested Silver Creek to describe the acts or omissions that support its Sixth Affirmative Defense. [**Exhibit E**, at 5]. In response, Silver Creek simply referred back to its Sixth Affirmative Defense. [**Exhibit G**, at 2].

### C. AP's Effort to Confer with Silver Creek Regarding its Discovery Responses from June 14, 2018 through June 29, 2018

Also on June 14, 2014, upon receiving Silver Creek's discovery responses and documents, AP immediately notified Silver Creek that Silver Creek's discovery was deficient. [**Exhibit A**, at 2-4]. AP explained that Silver Creek's privilege log and Answers to Interrogatories did not comply with the Federal Rules. [**Exhibit A**, at 2-4]. AP also raised a concern that Silver Creek's document production was incomplete, given the volume of the production (only about 120 documents in total, of which less than 25 constituted email communications) and asked Silver Creek to explain the scope of its efforts to collect responsive documents. [**Exhibit A**, at 2-4]. Given that the deposition of Silver Creek's corporate representative was scheduled to occur on June 18, 2018, AP requested an immediate response and stated it would seek to reopen discovery if necessary.

In response, Silver Creek stated that "Mitch did not print a lot of emails" and "did business by phone and in person." [**Exhibit A**, at 1]. And for various reasons, other hard copy

10

documents were obtained by AP through other sources, and Mr. Montgomery would not have kept much of the relevant hard copy documents. [**Exhibit A**, at 1-2]. Silver Creek also stated that there were documents that he could make available to counsel for AP, but that he believed those documents were not relevant or responsive to any document requests. [**Exhibit A**, at 1-2].[3] Silver Creek did not address the deficiencies raised regarding the privilege log and Answers to Interrogatories and provided no further explanation regarding the scope of Silver Creek's document collection. [**Exhibit A**].

The corporate representative deposition of Silver Creek went forward on June 18, 2018. During the deposition, Elsa Montgomery, Vice President of Silver Creek testifying on behalf of the company, briefly described Silver Creek's ESI production efforts in this litigation. [Elsa Montgomery Depo. Excerpt 1, attached as **Exhibit J**]. She testified that all of Mr. Montgomery's emails were housed on his computer and that she and Ms. McCormick, who is not counsel of record in this case and not a trial attorney, "check[ed] all emails and all files" on the computer. [**Exhibit J**, at 130].[4] Ms. Montgomery also stated that she deleted Mr. Montgomery's email account in approximately June 2017 while this litigation was pending. [Elsa Montgomery Depo. Excerpt 2, attached as **Exhibit K**, at 167-168].[5] She testified that no backup of Mr. Montgomery's emails was created but that all emails were still saved on his computer. [**Exhibit K**, at 168-169]. She also indicated that she was forwarded Mr. Montgomery's emails once she rejoined the company in 2015, but she stated that she did not have an email account from which

---

[3] AP later copied these documents on June 28, 2018 following further communications with Ms. McCormick. At no time did Ms. McCormick represent that the boxes of documents include emails collected from Mr. Montgomery's computer, and her prior statements concerning the scope of material in the boxes does not identify any email communications to or from Mr. Montgomery.

[4] The page number referenced in Exhibit J is to the deposition transcript page number.

[5] The page number referenced in Exhibit K is to the deposition transcript page number.

to receive forwards of Mr. Montgomery's emails before she rejoined the company. [**Exhibit K**, at 168].

AP reached out to confer with Silver Creek on June 18, 2018 following Silver Creek's corporate representative deposition. [June 18, Email and Letter, attached hereto as **Exhibit L**]. AP again described the deficiencies in Silver Creek's privilege log and Answers to Interrogatories. [**Exhibit L**, at 2-6]. AP also again raised its concern regarding the completeness of Silver Creek's production, particularly with respect to ESI, given the extremely limited production provided by Silver Creek with respect to emails and otherwise. [**Exhibit L**, at 5]. AP again asked that Silver Creek provide information regarding Silver Creek's effort to collect ESI in this litigation. [**Exhibit L**, at 5].

Silver Creek responded on June 19, 2018. [June 18-25 Email String, attached as **Exhibit M**]. With respect to the ESI on Mr. Montgomery's computer, Silver Creek stated only that Ms. McCormick "reviewed Mitch's computer and copied all of the emails pertaining to Silver Creek." [**Exhibit M**, at 4]. Counsel for Silver Creek did not indicate his involvement in the preservation, identification or production of responsive documents housed on Mr. Montgomery's computer or how he directed Ms. McCormick to identify and collect documents.  He also indicated that supplemental interrogatory responses would be served on June 20, 2018. [**Exhibit M**, at 3]. Counsel for AP and counsel for Silver Creek conferred telephonically shortly thereafter on June 19, 2018 before counsel for Silver Creek left for vacation on June 20, 2018. [**Exhibit M**, at 1-3]. Counsel for Silver Creek stated that he would provide Amended Answers to Interrogatories by the end of the week, along with a replacement privilege log that complied with the Federal Rules and that would include further entries. [**Exhibit M**, at 2-3].

Counsel for AP again asked for further clarification regarding the document collection efforts undertaken by Silver Creek with respect to ESI—such as how Silver Creek searched for documents, whether search terms were used, the date ranges identified and searched, preservation measures utilized, etc. [**Exhibit M**, at 1-2]. Counsel for Silver Creek refused to provide this information and repeatedly stated that Silver Creek had maintained all records and that all non-privileged documents had already been reviewed and produced. [**Exhibit M**, at 1-2].

Counsel for AP noted that Silver Creek had repeatedly stated that Mr. Montgomery "was not one to send emails," and thus, a very small production of emails (approximately 25 in total) have been produced by Silver Creek in the litigation. [**Exhibit M**, at 1-2]. However, AP received several hundred emails that were sent to or received by Mr. Montgomery relating to the Project in connection with third party discovery—suggesting that Mr. Montgomery did significant business relating to the Project by email. [**Exhibit M**, at 1-2]. Counsel for AP asked counsel for Silver Creek for an explanation for this discrepancy. [**Exhibit M**, at 1-2].  Counsel for Silver Creek did not respond to the request for an explanation.

Silver Creek submitted an "updated privilege log" with 3 entries, along with Supplemental Answers to Interrogatories, on June 22, 2018. [**Exhibit N**; Supplemental Answers to Interrogatories, attached as Exhibit O]. The "updated privilege log" did not correct the prior deficiencies in Silver Creek's original privilege log. [**Exhibit N**]. It was also unclear from the log as to whether Silver Creek was retracting its prior claims of privilege with respect to the original log, whether a further log was forthcoming, and whether Silver Creek had intended to produce 3 documents along with the log because those documents appeared to be reflected on the "updated privilege log" itself. [**Exhibit N**; June 21-26, 2018 Email String, attached as **Exhibit P**, at 1].

AP responded sought clarification regarding these issues and notified Silver Creek that the "updated privilege log" was still deficient because it failed to include revised entries for the original 11 entries. [**Exhibit P**, at 1]. AP also raised further deficiencies with Silver Creek's Supplemental Answers to Interrogatories. [**Exhibit P**, at 2].

AP also again noted that AP had serious concerns that a full collection and review of ESI had not been conducted. The "updated privilege log" included only 3 entries, and Silver Creek had indicated the log would identify all documents responsive to Request 81, as Silver Creek was asserting that all communications between Silver Creek and Ms. McCormick concerning the Project were privileged. [**Exhibit P**, at 1]. Given that Ms. McCormick had been representing Silver Creek since at least November 2013 in connection with the Project, it was difficult to understand how Silver Creek and/or Ms. McCormick's firm could have only 3 emails that were responsive to this Request for Production. [**Exhibit P**, at 1]. AP reiterated that no response had been received regarding the significant discrepancy between the volume of emails produced by Silver Creek's former law firm, and the much smaller volume produced by Silver Creek itself and that an explanation was needed to avoid the filing of a motion to compel, particularly considering the impending close of discovery. [**Exhibit P**, at 1; **Exhibit M**, at 1]. Given the continued lack of explanation regarding the discrepancies in Silver Creek's production of emails, and the fact that Ms. Montgomery had testified that she deleted Mr. Montgomery's email account during the litigation, AP requested access to Mr. Montgomery's computer so that it could understand the basis for the discrepancy and whether relevant emails were still housed on the computer. [**Exhibit P**, at 1; **Exhibit M**, at 1].

Counsel for Silver Creek responded briefly on June 27, 2018 while still out of the office on vacation. [June 27-29, 2018 Email String, attached as **Exhibit Q**, at 2]. Counsel did not

address AP's continued requests for an explanation regarding the lack of emails produced by Silver Creek from Mitchell Montgomery's computer or otherwise. Rather, counsel for Silver Creek stated that he had asked Ms. McCormick to "copy all of the emails from Elsa's computer related to Silver Creek and provide them to [AP]." [**Exhibit Q**, at 2]. Counsel stated that he was willing to stipulate to a 1 week extension of the discovery cutoff so that AP could review the additional documents. [**Exhibit Q**, at 2]. Counsel for Silver Creek did not address AP's continued concerns with Silver Creek's deficient privilege logs or its deficient Supplemental Answers to Interrogatories.

AP responded four hours later requesting Silver Creek's availability to confer telephonically, but received no response to that request. [**Exhibit Q**, at 1-2]. AP agreed that Ms. Montgomery's ESI should be produced but noted that because Elsa Montgomery is Vice President of Silver Creek and the company's corporate representative in this matter, the emails and other documents located on her computer should have already been collected, reviewed and produced by Silver Creek in the litigation. [**Exhibit Q**, at 1-2]. AP also noted that while Ms. Montgomery had testified in her deposition that she was forwarded all of Mr. Montgomery's emails once she rejoined the company in 2015, she also stated that she did not have an email address to receive Mr. Montgomery's emails that were sent before that date because she was not with the company. [**Exhibit Q**, at 1-2]. Given that the Replacement Promissory Note was negotiated and executed in 2014 before Ms. Montgomery rejoined Silver Creek, making her emails available to AP now would not resolve the issue. [**Exhibit Q**, at 1-2]. On June 29, 2018, at 12:25pm, counsel for Silver Creek responded that in fact Mr. Montgomery's emails from August 2011 forward were housed on Elsa Montgomery's computer, contrary to her testimony, and Silver Creek would be producing such documents. [**Exhibit Q**, at 1]. However, the belated

offer of production of Elsa Montgomery's documents did not address the issue of the apparent failure to produce all relevant email communications from Mitchell Montgomery's computer or the prior statements that all responsive, non-privileged documents had already been produced. As of the date of this filing, Silver Creek has not provided an explanation regarding the significant discrepancy between the volume of emails produced by Silver Creek and the volume of emails produced by Mr. Montgomery's prior law firm or otherwise explained its ESI collection and production protocol. Silver Creek has also not addressed the issues raised regarding its Supplemental Answers to Interrogatories or its privilege logs—issues that AP began raising on June 14, 2018.

Given that AP has undertaken to understand and resolve each of the above-referenced discovery issues for over two weeks without a resolution and that even as of the date of this filing, Silver Creek has failed to address, let alone explain, the reason for the discrepancy in the productions, AP was forced to move forward with its Motion to Compel. Thus, AP files the instant Motion to resolve the issues raised regarding: (1) Silver Creek's document production discrepancies and deficiencies, (2) Silver Creek's deficient privilege log, and (3) Silver Creek's deficient Supplemental Answers to Interrogatories.

## III.   ARGUMENT

### A.  Silver Creek's Document Production

It is well-settled that parties to federal litigation are obligated to identify, preserve and produce ESI, subject to the requirements of the Federal Rules. *See S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 417 (S.D.N.Y. 2009) ("[E]lectronically stored information is subject to discovery."); Fed. R. Civ. P. 34; Middle District of Florida Discovery Handbook, at 23-26. Indeed, the obligation to produce ESI may even include deleted computer files and emails. *See*

*Wells v. Xpedx*, 2007 WL 1200955, at *1-2 (M.D. Fla. April 23, 2007) (stating the "producing party has the obligation to search available electronic systems for deleted emails and files").

When issues concerning the appropriate preservation, identification and production of ESI have been raised, it is well-recognized that the court may determine that an independent computer forensic expert should be appointed to identify responsive documents and emails that may still be housed on the electronic device(s) at issue, including by retrieving any deleted documents or emails, and creating a mirror image of the hard drive. *See, e.g., U&I Corp. v. Advanced Medical Design, Inc.*, 251 F.R.D. 667, 676-77 (M.D. Fla. 2008) (authorized use of independent computer expert to sample information on hard drives for responsive information). This relief is particularly appropriate where the party requesting discovery obtains documents from third party sources that suggest that the producing party's production was incomplete. *See Bank of Mongolia v. M&P Global Financial Services, Inc.*, 258 F.R.D. 514, 520-21 (S.D. Fla. 2009) (requiring an independent forensic computer expert to review the defendants' computers and retrieve and responsive documents due to defendants' lack of response to requesting party's request for information and discrepancy between the documents produced by third parties and the defendants). In the event that the expert discovers that relevant, responsive documents and data has been withheld or deleted, the court may require that party to pay the cost of the forensic expert, as well as the cost of production. *See  Bank of Mongolia v. M&P Global Fin. Servs., Inc.*, 2009 WL 10682131, at *2 (S.D. Fla. Dec. 22, 2009); *U&I Corp.*, 251 F.R.D. at 676-77.

To date, Silver Creek has produced approximately two dozen email communications from Silver Creek, including from the company's primary principal, Mitchell Montgomery, despite assertions that it has produced all non-privileged responsive documents. The explanation for this volume of email communications is that Mr. Montgomery did not conduct business by

email and instead communicated by telephone. But a separate production from a third party law firm yielded a production of hundreds of emails to and from Mr. Montgomery. AP has raised this this discrepancy repeatedly and sought in good faith to obtain an explanation regarding the difference in volume between the productions, but Silver Creek has not provided any explanation. Compounding AP's concern regarding the preservation and production of documents is the testimony of Elsa Montgomery that she deleted Mr. Montgomery's email account during the pending litigation.

Silver Creek's offer immediately before the close of discovery to produce relevant email communications from Ms. Montgomery's computer—documents that should have already been produced in this litigation because Ms. Montgomery is the Vice President of Silver Creek—does not resolve the issues repeatedly raised by AP over the course of the preceding two weeks. Indeed, it raises a question as to why the documents and communications were not produced earlier.

As such, AP respectfully requests that the Court permit the selection of a qualified, independent forensic examiner to conduct an examination of Mr. Montgomery's computer in accordance with the procedure outlined in *Bank of Mongolia v. M&P Global Financial Services, Inc.*, 258 F.R.D. 514, 520-21 (S.D. Fla. 2009). Given the failure of Silver Creek to provide an explanation regarding its ESI productions, an independent forensic examiner best balances Silver Creek's desire for privacy and protection from unnecessary intrusion with AP's need for information regarding the documents and data in Silver Creek's possession that may be relevant to the issues raised in this litigation.

### B.  Silver Creek's Privilege Log

Second, Silver Creek's privilege log and updated privilege log are deficient, unclear, and must be amended to comply with Federal Rule 26(b)(5). The requirements of an appropriate privilege log are straight forward. In order to preserve a claim of privilege:

> the objecting party must provide a log or index of withheld materials that includes for each separate document, [1] the authors and their capacities, [2] the recipients (including copy recipients) and their capacities, [3] he subject matter of the document, [4] the purpose for its production, and [5] a detailed, specific explanation of why the document is privileged or immune from discovery.

*Gupta v. Walt Disney World Co.*, 2006 WL 2724899, at *1 (M.D. Fla. Sept. 22, 2006). Neither the original privilege log provided on June 14, 2018 nor the "updated privilege log" provided on June 22, 2018 meet these requirements.

The original privilege log fails to identify the capacities of any of the recipients or authors of any of the 8 emails listed, and it fails to provide any information demonstrating that the remaining three draft documents are privileged. [**Exhibit I**]. It also fails to provide a description of the basis for the assertion of privilege, and in fact even fails to identify the privilege asserted. [**Exhibit I**]. The "updated privilege log" also fails to provide sufficient explanation regarding the basis for the assertion of privilege as required by this court's decision in *Gupta*. [**Exhibit N**]. Thus, these logs must be amended to comply with the Rules.

More fundamentally, the privilege logs appears to be incomplete and do not include all documents withheld on the basis of privilege; thus, with respect to any further documents that have not been identified but are being withheld, Silver Creek has waived any assertion of privilege. *See A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 2000 WL 1538003, at *3 (S.D.N.Y. Oct. 17, 2000).   Again, Request 81 seeks all communications between Silver Creek and its transactional counsel, Jan McCormick, regarding the Project. [**Exhibit D**, at 9]. Silver Creek did

not object to Request 81 other than by asserting that every document in its possession, custody or control that is responsive to Request 81, is privileged and not subject to production. [**Exhibit N**]. And while Ms. McCormick has represented Silver Creek in connection with issues related to this litigation since at least November 2013, [**Exhibit I** (log entry identifying November 2013 communication)], Silver Creek's privilege log and updated privilege log contain a combined total of 9 log entries of communications involving Ms. McCormick.[6] [**Exhibit I**; **Exhibit N**].

Given Silver Creek's continued failure to provide an explanation regarding its procedure for the identification, preservation and production of ESI, and specifically Mr. Montgomery's emails, and its failure to explain how only 9 emails during the course of an over four year representation were identified on the logs, any communications involving Ms. McCormick and the Project that are discovered through a review of Mr. Montgomery's computer or in any production from Ms. Montgomery's computer or any other source, should be produced and any assertion of privilege deemed waived. *A.I.A. Holdings*, 2000 WL 1538003, at *3 ("Where a party has completely failed to provide an index of documents withheld on the ground of privilege, a finding of waiver is appropriate."). Having failed to comply with its discovery obligations under Federal Rule 26(b)(5), Silver Creek should not be permitted to withhold documents based on an assertion of privilege that has never been raised.

### C.  Silver Creek's Supplemental Answers to Interrogatories

Finally, Silver Creek's Supplemental Answers to Interrogatories #1-6 are deficient and must be amended. The deficient Supplemental Answers are as follows:

---

[6] Notably, at one point, Silver Creek had indicated that it intended to designate Ms. McCormick as its corporate representative for its June 18, 2018 corporate representative deposition, suggesting that she has had involvement in at least some aspects of the Project and would have sent or received more than 9 emails with Mitchell Montgomery and others since November 2013.

1.      State all facts that support Your contention that AP lacks standing to enforce the Replacement Note and Identify all Documents that You believe support Your contention.

**Response**:  The original Replacement Promissory Note was never delivered to Plaintiff. Therefore, Plaintiff was never in possession of the original partially executed Replacement Promissory Note and Plaintiff did not execute the original Replacement Promissory Note under the heading "ACCEPTED AND AGREED". Further, the Settlement Agreement dated January 26, 2016 states that AP Gulf States, Inc. owns the Replacement Promissory Note, not the Plaintiff. ***In addition, Defendant relies upon the documents produced to Plaintiff, including those made available to inspect at Jan McCormick's office, and the deposition testimony of Defendant's corporate representative.***

2.      State all facts that support Your contention that the Security Agreement Accompanying Secured Promissory Note does not constitute a "mortgage" or is otherwise unenforceable and Identify all Documents that You believe support Your contention.

**Response**: The original Security Agreement Accompanying Secured Promissory Note is not enforceable as a mortgage because it was not executed under the formalities of Florida law. A mortgage requires a notary, witness(es) and a legal description to adequately describe the real property. The original Security Agreement did not attach a legal description, was not witnessed or notarized and was never filed in the public records. Further, the original of that agreement was never delivered to Plaintiff. ***The Defendant relies upon the documents produced to Plaintiff, including those made available to inspect at Jan McCormick's office, and the deposition testimony of Defendant's corporate representative.***

3.      State all facts that support Your contention that SCG is not in default under the terms of the Replacement Promissory Note or that the Replacement Promissory Note is otherwise unenforceable and Identify all Documents that You believe support Your contention. To the extent that You contend that SCG is not in default under the terms of the Replacement Promissory Note due to full or partial performance, Identify every act You contend qualifies as performance by SCG.

**Response**: In addition to the matters set forth in #1 and #2 above, ***Defendant relies upon the documents produced to Plaintiff, including those made available to Plaintiff to inspect at Jan McCormick's office, and the deposition testimony of Defendant's corporate representative.***

4.      State all facts that support Your contention that AP did not provide a proper notice of default as alleged in Your First Affirmative Defense, and Identify all Documents that You believe support Your contention.

21

**Response**: Plaintiffs Notice of Default is deficient because Plaintiff does not have standing to enforce the Replacement Note (See answer #1 above). The Notice of Default includes an origination fee, the amount of which is stated in the notice. In addition, at the time the original note was executed, the parties agreed that the note would be due when the assisted living facility was occupied and the proceeds from operating income would be used to repay the note. ***In addition, Defendant relies upon the documents produced to Plaintiff, including those made available to inspect at Jan McCormick's office, and the deposition testimony of Defendant's corporate representative.***

5.      Describe each act or omission of AP that You contend prevented Your performance of Your agreements as alleged in paragraph 15 of your Sixth Affirmative Defense and, as to each such act, state how AP's conduct prevented Your performance.

**Response**: ***Defendant adopts and reiterates paragraphs 11, 12, 13 and 14 of the Sixth Affirmative Defense of its Answer served January 23, 2018.*** In addition, Plaintiff failed to adequately staff the job, i.e. "not enough boots on the ground", failed to hire local contractors which increased the subcontractor cost for the job, failed to monitor subcontractors, failed to finish the job, or perform any warranty work. ***In addition, Defendant relies upon the documents produced to Plaintiff, including those made available to Plaintiff to inspect at Jan McCormick's office, and the deposition testimony of Defendant's corporate representative and deposition of Chris Hughes.***

6.      Describe all damages or losses You contend to have suffered as a result of any act or omission of AP, stating each element of damage or loss You claimed to have suffered, the act or omission by AP corresponding to each such element and Identify all Documents that You believe support Your contention.

**Response**:  All payments made to Plaintiff because AP Gulf States was not a licensed contractor when it performed the work on the Project. ***See documents marked as exhibits to the depositions of Chris Hughes, Corbett Nichter and Elsa Montgomery. In addition, Defendant relies upon the documents produced to Plaintiff, including those made available to inspect at Jan McCormick's office, and the deposition testimony of Defendant's corporate representative.***

[**Exhibit E**; **Exhibit O** (emphasis added)].

Each of these Supplemental Answers vaguely asserts a reliance on "the documents produced to Plaintiff, including those made available to inspect at Jan McCormick's office," as well as "the deposition testimony" of various witnesses. But it is well-settled that "[a]nswering interrogatories simply by directing the proponent to rummage through other discovery materials

22

falls short of the obligations imposed by Rule 33." *Autoridad de Carreteras y Transportacion v. Transcore Atlantic, Inc.*, 319 F.R.D. 422, 431 (D.P.R. 2016) (quoting *Mulero-Abreu v. Puerto Rico Police Dept.*, 675 F.3d 88, 93 (1st Cir. 2012)). Thus, each of these Answers is deficient.

Additionally, Silver Creek's Supplemental Answer to Interrogatory #5 is also deficient for a separate reason. While the Interrogatory asks Silver Creek to describe each act or omission it contends prevented Silver Creek's performance as alleged in Paragraph 15 of its Sixth Affirmative Defense, Silver Creek's Supplemental Answer refers back to the Sixth Affirmative Defense itself. This does not suffice under the Federal Rules, which do not permit a party to respond to an interrogatory by referring to allegations in the pleadings. *See, e.g.*, *Pruco Life Ins. Co. v. Brasner*, 2011 13116893, at *3 (S.D. Fla. July 5, 2011); *Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.*, 61 F.R.D. 115, 120 (N.D. Ga. 1972) ("[I]ncorporation by reference of the allegations of a pleading is not a responsive and sufficient answer to an interrogatory."). Accordingly, Silver Creek should be compelled to amend its Answers to Interrogatories #1-6.

## CONCLUSION

For the foregoing reasons, AP respectfully requests that this Court: (1) order the immediate inspection and imaging of Mitchell Montgomery's computer by a forensic expert, (2) compel Silver Creek to provide a replacement privilege log and to produce all communications between Ms. McCormick and Silver Creek that have not yet been identified on either privilege log, (3) compel Silver Creek to provide amended answers to AP's First Set of Interrogatories, and (4) provide any other relief it deems just and proper.

**Local Rule 3.01(g) Certificate of Conferral**

Counsel for Plaintiff certifies that she conferred with counsel for Defendant in good faith over the course of 14 days, both by electronic mail and telephone as detailed above, but the parties were unable to resolve the issues raised in the instant motion.

Dated:  June 29, 2018                             GUNSTER YOAKLEY & STEWART, P.A.

                                                            */s/    Lauren V. Purdy*
                                                            William E. Adams, Jr.
                                                            Florida Bar No. 467080
                                                            Lauren V. Purdy
                                                            Florida Bar No. 93943
                                                            225 Water Street, Suite 1750
                                                            Jacksonville, Florida 32202-5185
                                                            P: (904) 354-1980    F: (904) 350-5953
                                                            Email:  badams@gunster.com
                                                            Email:  lpurdy@gunster.com
                                                            Email:  lfrancis@gunster.com
                                                            Email:  aarmstrong@gunster.com

                                                            *Attorneys for Adolfson & Peterson, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing was filed June 29, 2018 on CM/ECF

which will provide electronic notification to:


Frederick R. Brock
Gartner, Brock and Simon
1300 Riverplace Blvd., Suite 525
P.O. Box 10697
Jacksonville, Florida 32247-0697
rbrock@gbslaw.net
gbsbrock@aol.com

*Counsel for Silver Creek Genpar, LLC*

       */s/ Lauren V. Purdy*
       Attorney